Opinion issued May 22, 2008










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00703-CV




FIRST OIL PLC, Appellant

V.

ATP OIL & GAS CORPORATION and ATP OIL & GAS (UK) LTD.,
Appellees




On Appeal from the 165th Judicial District
Harris County, Texas
Trial Court Cause No. 2005-14981




O P I N I O N

          In this interlocutory appeal, appellant, First Oil PLC (First Oil), appeals from
the trial court’s order denying its special appearance in the lawsuit filed by appellees,
ATP Oil & Gas Corporation (ATP Texas) and ATP Oil & Gas (UK) Ltd. (ATPUK). 
See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2007). More
than two years after the appellees filed the lawsuit, they amended their pleadings to
add Ian Suttie as a party to the lawsuit and then used those amended pleadings to
support their position that the trial court should grant their motion for continuance of
the special appearance hearing. Appellees’ position was that First Oil would not be
prejudiced by the delay of the special appearance hearing because the amended
pleadings added a new party to the case and therefore the case would not be resolved
by the special appearance hearing. In defending against the motion for continuance
of the special appearance hearing, First Oil filed, argued, and obtained a favorable
ruling on its motion to strike the amended pleading. The trial court held that First
Oil’s conduct concerning the motion to strike the amended pleadings waived its
special appearance because the motion to strike was determined before the special
appearance motion. In its sole issue, First Oil contends it did not waive its special
appearance because it was necessary to argue the motion to strike in order to defend
against appellee’s motion for continuance of the special appearance hearing. 
Appellees respond by supporting the trial court’s waiver ruling, and, in a conditional
cross-point, by challenging the trial court’s holding that, except for the waiver, the
special appearance would have been meritorious. We conclude that the trial court
erred in its determination that First Oil waived its special appearance, but we agree
with the trial court’s finding that First Oil does not have sufficient minimum contacts
with Texas to subject it to the jurisdiction of Texas courts. We therefore reverse and
render judgment dismissing First Oil from the lawsuit.
BackgroundTo understand the underlying dispute, it is necessary to begin with a brief
discussion of the relationship between the corporations that are the parties in this
lawsuit. First Oil, a holding company incorporated in Scotland, is wholly owned and
controlled by Suttie, a Scottish businessman. Suttie owns First Oils’s shares
individually and through another company that he controls. First Oil is indirectly a
parent company of Expro, a United Kingdom company specializing in the production
of oil and gas in the North Sea. Expro entered into a joint venture with ATPUK to
develop oil and gas properties in the North Sea. ATPUK is incorporated in England
and Wales, and is a subsidiary of ATP Texas, a Texas corporation that engages in the
business of acquisition, development, and production of oil and gas properties in the
Gulf of Mexico and the North Sea.  
          The initial litigation was between Expro and ATPUK in a court in England. 
The joint operating agreement between Expro and ATPUK contained forum-selection
and choice-of-law clauses specifying that any claim arising out of the joint venture
or the joint operating agreement would be governed by English law and brought in
English courts. Expro filed suit in an English court against ATPUK over the joint
venture agreement, but that suit was dismissed upon Expro’s payment of attorney’s
fees and costs. 
          Litigation was resurrected in Texas in Harris County in March 2005. ATP
Texas and ATPUK filed suit against First Oil in the district court, asserting claims for
tortious interference with existing contracts, tortious interference with prospective
business relations, defamation, and business disparagement. The pleadings asserted
that Suttie and First Oil knew of “ATP’s highly advantageous financial relationships”
with two companies and began to interfere with these relationships. According to the
pleadings, Suttie and First Oil “began wreaking havoc” with the relationships of ATP
Texas and ATPUK by making false accusations against them of sweetheart deals and
kickbacks, by impugning their professional reputation, by delaying critical payments,
by instituting frivolous and expensive litigation, by engaging in a series of deliberate
tactics to portray them in the worst possible light, and by bringing maximum
economic pressure on them by interfering with the existing relationships with key
vendors and lenders.
          First Oil responded to the lawsuit in Harris County by filing a special
appearance to challenge the court’s exercise of personal jurisdiction over it, but the
special appearance hearing was repeatedly delayed. The hearing was initially set for
September 2006, but appellees sought a delay to re-serve discovery requests on Suttie
in Scotland. More delay of the hearing resulted when, in February 2007, the trial
court granted appellees’ request to depose First Oil’s corporate representative. After
the deposition was taken, the hearing was then scheduled for June 2007. However,
ten days before that setting, appellees requested another continuance of the hearing.
          Appellees’ motion for continuance relating to the June 2007 hearing was filed
at about the same time they filed a second amended petition that added Suttie as a
defendant. The motion for continuance by appellees contended that First Oil would
not be prejudiced by the delay now that the amended pleadings added Suttie because
the “ruling on First Oil’s special appearance will not dispose of this case.” The other
two grounds in the motion for continuance concerned the need for more discovery
relating to personal jurisdiction; more specifically, appellees asserted that they still
needed discovery that was the subject of a motion to compel discovery relevant to the
single business enterprise theory of jurisdiction and an affidavit from the former
president of Nautronix, Inc., who was out of the country. 
          First Oil opposed the continuance of the special appearance hearing. In
response to appellees’ assertion that the continuance would not cause First Oil
prejudice since the addition of Suttie as a party to the case meant that the case would
not be resolved by the special appearance hearing, First Oil filed a motion to strike
the amended pleading, explaining that the addition of Suttie “at this late hour will
surely delay final disposition of this case” and that the delay would prejudice First
Oil. First Oil also asserted that adding Suttie as a party would violate the rules of
civil procedure, the trial court’s scheduling order, and the statute of limitations. First
Oil contended that “the petition adds a party well after the deadline for adding parties
in this matter has passed” because under rule 63 of the Texas Rules of Civil
Procedure


 any amended pleadings were due no later that May 2006, over a year
before the second amended petition was filed, and the amended petition violated the
trial court’s scheduling order that set the case for trial in May 2006. First Oil also
asserted that “the attempt to add Mr. Suttie is entirely futile.” First Oil claimed that
the amended petition asserted a tortious interference claim against Suttie, but that
claim was barred by the two-year statute of limitations because it was filed more than
two years after the original suit had been filed.



           The trial court held a hearing on June 25, 2007 concerning the four motions
that were before the court. The parties agreed that the four motions were: (1)
appellees’ motion for continuance of the special appearance hearing; (2) appellees’
motion to compel discovery; (3) First Oil’s motion to strike the second amended
petition; and (4) First Oil’s special appearance motion. The parties agreed that all the
motions were related to the special appearance and that if the court ruled in favor of
appellees on the first three motions, the court would not conduct the special
appearance hearing, which was the fourth motion before the court.
          In describing for the trial court the relationship between appellees’ motion for
continuance of the special appearance hearing and First Oil’s motion to strike the 
amended pleadings, appellees’ attorney told the trial court, “They were overlapping
in both of those.” First Oil also said, “The issues are all intertwined.” The parties
also discussed what order the motions should be addressed by the trial court. First
Oil asserted that the special appearance motion needed to be addressed last because
if appellees prevailed in any of the first three motions, then the court would not reach
the special appearance motion. First Oil stated,
 
I think the motion to continue and motion to compel are the first order
of business, because we don’t -- and do the motion to strike, too, but we
don’t get to the special appearance if they have their way on those so we
might as well do those first. It’s basically the same motion, even though
it’s two separate motions so . . . .

In response to First Oil’s proposition that the court first resolve appellees’ motion for
continuance and motion to compel, appellees suggested that the court resolve the
motions at the same time. Appellees’ attorney said, “Well, the reason why I
suggested that we can probably do the three at the same time because they allege one
of the grounds in their motion to strike is that it’s prejudiced by filing our second
amended petition which adds a new party.”
          Although the parties began by discussing the motion to compel discovery, the
discussion migrated to the amended pleadings that added Suttie as party. Appellees’
attorney explained that he added Suttie as a party in the second amended petition
because he “had to pull Suttie in . . . to get Suttie’s deposition over here” and “to
establish the single business enterprise with Suttie.”

          In response to appellees’ explanation regarding why Suttie was added as a
defendant to the lawsuit, First Oil argued against allowing the petition to be amended
to add Suttie, and presented reasons why the special appearance should be granted.
First Oil stated,
 
That’s exactly what we are saying here, Your Honor, why we have the
motion to strike is after two and a half years of this, they want a do over. 
After two and a half years, and a third trial setting, they want to start
over. They want to do discovery on [Suttie] again. Presumably, they
will try to serve the entities again. . . . So two and a half years into this,
they want to do it again. It’s prejudicial to First Oil because they are
trying to delay the Court ruling on this. It’s untimely. And it’s futile. 
It is futile to add Mr. Suttie two and a half years into this on a claim that
has a two-year statute of limitations. Even if they have a claim, when we
get to talking about the special appearance what you will see what’s
really going on here, this is -- talk about this just for a second. If the
court will recall First Oil Expro, a UK entity, has a contract with ATP
UK. That contract says English law, English courts. They are claiming
we have interfered with their contracts with Stolt and Bluewater. They
have yet to ever come up with a single contact we had with Stolt and
Bluewater. What they are saying is once ATP and First Oil got into this
contract together, that they didn’t really like the questions we were
asking them and we were being very difficult about, you know, our side
of this contract and we caused them to go to Stolt and Bluewater and do
things in Texas. That’s not a basis for jurisdiction. I don’t think it’s a
basis for a claim either. You can’t interfere with your own contract no
matter what cruddy things we said to ATP UK. . . . . [Assuming First Oil
breached the contract] [t]hat’s an English contract, English law, English
courts. None of this, none of this has anything to do with the U.S. and
they just want to keep us here and hold us here and continue to put us
through the wringer two plus years after this case has been filed. That’s
inappropriate. Motion to continue should be denied. Motion to Compel
should be denied. The motion to strike should be granted and we should
have the hearing we should have had back in September which is, does
First Oil belong in this Court or not.

(Emphasis added). The relief requested by First Oil was that the court deny
appellees’ motion for continuance; deny appellees’ motion to compel discovery; grant
the motion to strike the amended pleadings and to proceed with the special
appearance hearing to determine whether the special appearance was meritorious. 
          At this point in the hearing, the trial court said that it was time to “move this
case,” but appellees asked for one more week so that their witness’s affidavit
concerning the merits of the special appearance would be procedurally admissible.


 
The trial court then expressed concern that the continuance would not be for just one
week, stating, “It’s going to be one week and then the next week and then the next
week.” After the attorneys discussed the importance of the affidavit, the trial court
said it would reset the hearing to give the seven-day continuance to appellees to allow
the affidavits filed by appellees to be admissible.
          After the trial court’s statement that the case would be reset for seven days, the
record shows the following exchange:
[The Court]. . . So I will give you seven days, but, you know, at
the end of that seven days I have to rule.
 
[Appellees] No. Seven days we will be here. Can I finish now
on his motion to strike our - - 
 
[The Court]Let me focus you on two things I’m very concerned
about. 

The trial court then proceeded to express concerns she had about the merits of the
motion to strike the amended pleadings. The parties discussed the motion to strike
the amended pleading by answering the court’s questions. Appellees said the
addition of Suttie was timely under the court’s docket control order, was compliant
with the applicable rules of civil procedure, and was allowed under its theory that
Suttie was part of a single business enterprise with First Oil. Appellees also
contended that First Oil could not present a limitations defense on behalf of another
party.
          In discussing the motion to strike, First Oil continued to object to the further
continuance of the special appearance hearing beyond the seven days that had been
granted by the court. First Oil said, “To the extent they are using this to delay and
frustrate my client’s ability to get to a final judgment here, which is one of the things
that they talk about in their motion to continue where they didn’t just ask for seven
days, where they asked for a continuance to get everything, I am prejudiced.” Each
side also discussed the merits of the special appearance motion, throughout the
discussion about the motion to strike. At the conclusion of the hearing, the trial court
said the hearing would resume in July, and stated, “And I will either have ruled on a
motion to strike before then or at that time but I’m hoping to do it before then . . . .”
          The hearing resumed on July 9, 2007. Appellees immediately reminded the
court that it was going to rule on the motion to strike “before the [special appearance]
hearing and at the latest before we had the argument on the hearing because that
affects a number of things.” More specifically, appellees told the court the evidence
in the special appearance hearing would be affected by the court’s ruling on the
motion to strike the amended pleadings. Appellees stated,
One, we want to know whether Mr. Suttie is going to be in or out of this
litigation. Affects whether they can actually bring the action or bring
their motion to strike and it would affect two other causes of action that
we’re going to have to argue in the special appearance if you strike the
second amended petition. 

(Emphasis added). Without response from First Oil, the trial court said it was
granting the motion to strike. The trial court signed the previously filed order on the
motion to strike and also denied appellees’ motion to compel.
          The trial court immediately proceeded to hear the merits of the special
appearance motion. After First Oil presented the merits favoring its special
appearance motion, appellees replied by claiming that First Oil waived its special
appearance by arguing the motion to strike the amended pleadings. First Oil
responded to the waiver argument by asserting that appellees “linked” their motion
for continuance to their amended pleadings and, therefore, First Oil’s motion to strike
was only to avoid appellees’ attempt “to frustrate First Oil’s ability to get a hearing
on its [special appearance].” After taking the matter under advisement, the trial court
found First Oil waived its special appearance. In its order denying First Oil’s special
appearance, the trial court stated, “[T]he court concludes that while the objection to
personal jurisdiction contained in the Special Appearance is well-taken and should
otherwise be sustained, First Oil PLC waived its special appearance when the Court
heard its motion to strike the Plaintiffs’ Second Amended Petition.”
Waiver of Special Appearance
          In its sole issue, First Oil contends that its motion to strike appellees’ amended
pleadings that added Suttie as a defendant was entirely consistent with its assertion
that the district court lacked jurisdiction over First Oil and, therefore, was not a
waiver of its special appearance. Appellees defend the trial court’s ruling that found
waiver by referring to the requirements in rule 120a of the Texas Rules of Civil
Procedure


 and by asserting that the motion to strike was inconsistent with First Oil’s
special appearance because it sought relief on the merits of the claim. Appellees also
contend the motion to strike was unnecessary for First Oil to obtain a hearing on its
special appearance.
A. Applicable Law Concerning Waiver of Special Appearance 
           Rule 120a requires compliance with its terms, by stating that the consequence
for failure to comply with its terms is a waiver of the special appearance. See Tex.
R. Civ. P. 120a(1) (“Every appearance, prior to judgment, not in compliance with this
rule is a general appearance”). The supreme court has explained that a party enters
a general appearance and waives a special appearance “when it (1) invokes the
judgment of the court on any question other than the court’s jurisdiction, (2)
recognizes by its acts that an action is properly pending, or (3) seeks affirmative
action from the court.” Exito Elecs. Co. v. Trejo, 142 S.W.3d 302, 306 (Tex. 2004)
(holding Rule 11 agreement did not waive special appearance).
          Rule 120a has requirements commonly referred to as the due-order-of-hearing
and the due-order-of-pleading requirements. The parties dispute whether First Oil
met the due-order-of-hearing requirement. The due-order-of-hearing requirement
means that a special appearance motion “shall be heard and determined before a
motion to transfer venue or any other plea or pleading may be heard.” Tex. R. Civ.
P. 120a(2); Trejo, 142 S.W.3d at 306. 
          Although the parties dispute whether the hearing of the motion to strike
violated the due-order-of-hearing requirement, First Oil’s special appearance motion
undisputedly met the due-order-of-pleadings requirement. Under the due-order-of-pleading requirement, “[A] special appearance shall be made by sworn motion filed
prior to a motion to transfer venue or any other plea, pleading or motion.” See Tex.
R. Civ. P. 120a(1); Trejo, 142 S.W.3d at 304. However, pleas, pleadings, and
motions not related to the special appearance may be contained in the same
instrument as the special appearance or in other later filed instruments without
waiving the special appearance. See Tex. R. Civ. P. 120a(1); Trejo, 142 S.W.3d at
306. First Oil’s motion to strike the amended petition came after more than two years
of discovery relating to the special appearance motion, and after repeated delays of
the special appearance hearing due to the repeated requests of appellees. Thus, First
Oil plainly met the due-order-of-pleadings requirement for its special appearance. 
B. Rulings Related to Special Appearance Do Not Waive Special Appearance
          Certain rulings by the trial court that are related to the special appearance do
not violate the special appearance rule. Trejo, 142 S.W.3d at 308. For example, trial
court rulings concerning discovery related to the special appearance are not rulings
that waive the special appearance. Id. The Supreme Court of Texas explained its
rationale for allowing certain rulings related to special appearances as follows:
It is simply illogical to allow the parties to engage in relevant discovery,
which can be a vital part of resolving a special appearance, but prohibit
the nonresident defendant from seeking the trial court’s ruling on
disputes that may affect the evidence presented at the special appearance
hearing. . . . [A] nonresident defendant’s participation in the trial court’s
resolution of such discovery matters does not amount to a recognition
that the action is properly pending or a request for affirmative relief
inconsistent with the jurisdictional challenge. We therefore hold that a
trial court’s resolution of discovery matters related to the special
appearance does not amount to a general appearance by the party
contesting personal jurisdiction.

Id. at 308. 
          Another example of a ruling by the trial court that does not waive the special
appearance is the court’s granting of a specially appearing defendant’s motion for
continuance of the special appearance hearing. Dawson-Austin v. Austin, 968 S.W.2d
319, 322 (Tex. 1998). The Trejo and Dawson-Austin decisions show that a specially
appearing defendant can obtain some limited affirmative relief from the trial court
concerning matters relating to the special appearance without waiving the special
appearance. See id.; Trejo, 142 S.W.3d at 306. 
C. Motion to Strike was Related to Continuance of Special Appearance Hearing
          It is undisputed that both parties considered the motion to strike as related to
and intertwined with the special appearance motion. Counsel for appellees
represented to the trial court that appellees’ motion to continue the special appearance
hearing and First Oil’s motion to strike the second amended petition were
“overlapping.” Counsel for appellees also told the trial court, “[T]he reason why I
suggested that we can probably do the [motion to continue and motion to strike] at
the same time because they allege one of the grounds in their motion to strike is that
it’s prejudiced by filing our second amended petition which adds a new party.” 
(Emphasis added). Counsel for First Oil also stated that “[t]he issues are all
intertwined.” The record is thus undisputed that both parties believed that First Oil’s
motion to strike the amended pleadings was related to appellees’ motion for
continuance of the special appearance hearing. Appellees claimed that First Oil
would not be prejudiced by the delay because the amended pleadings added a party
and asserted that the hearing on the special appearance would not resolve the case,
but First Oil refuted that assertion by challenging the amended pleadings in its
response to the motion for continuance. We conclude that, in these circumstances,
where the record is undisputed that the issues in the motion to continue the special
appearance hearing and the motion to strike the amended petition were overlapping
and intertwined, First Oil “did not request affirmative relief inconsistent with [First
Oil’s] assertion that the district court lacked jurisdiction.” See Dawson-Austin, 968
S.W.2d at 323. 
          We agree with First Oil that the Texas Supreme Court’s analysis in Dawson-Austin is instructive in determining that waiver did not occur here. See id. In
Dawson-Austin, the defendant filed a special appearance, a motion to quash service
of process, a plea to the jurisdiction, and a plea in abatement. Id. The plaintiff set a
hearing on these matters, and the defendant requested a motion for continuance on the
day of the hearing. Id. The supreme court stated that the specially appearing
defendant’s request for a continuance of the special appearance hearing “did not
request affirmative relief inconsistent with [the defendant’s] assertion that the district
court lacked jurisdiction” and that, because of rule 120a’s requirement that a special
appearance must be determined before “any other plea or pleading may be heard,” the
defendant did not waive her special appearance by requesting a continuance on the 
other matters. Id. 
          The same three reasons that supported the finding against waiver in Dawson-Austin apply here. See id. First, as in Dawson-Austin, the special appearance motion
was timely filed; First Oil’s motions in opposition to appellees’ motion for
continuance, like Dawson-Austin’s motion for continuance, came after the special
appearance motion was filed. Id. 
          Second, as in Dawson-Austin, the motion “did not request affirmative relief
inconsistent with . . . the assertion that the district court lacked jurisdiction, which . . .
is the test for a general appearance.” Id. In Dawson-Austin, the court specifically
allowed the party seeking the special appearance some limited affirmative relief that
was not inconsistent with the assertion that the court lacked jurisdiction. Id. There,
the affirmative relief was the request by the party moving for the special appearance
that the court “defer action on all matters.” Id. Here, the affirmative relief is the
request that the court not defer the special appearance hearing by not allowing
appellees’ motion for continuance of the special appearance hearing. Intertwined
with First Oil’s argument against the continuance was its motion that the amended
pleadings should be stricken, which was First Oil’s response to appellees’ assertion
that First Oil would not be prejudiced by the continuance because the case would not
be resolved by the special appearance hearing now that Suttie was an added party. 
Although First Oil received some limited affirmative relief by the trial court’s striking
the amended pleadings that added Suttie as a party, that relief was not inconsistent
with the assertion that the court lacked jurisdiction. Id. The relief was entirely
consistent with the assertion of lack of jurisdiction because, if Suttie was not struck
as an additional party, appellees would have persisted in arguing to the trial court that
the court should delay the hearing on the special appearance motion because the delay
would not prejudice First Oil. See id.
          Third, as in Dawson-Austin, the motion “was particularly appropriate.” Id. 
There, the court noted that the opponent of the special appearance motion set the
motion for a hearing. Id. The court determined that it was appropriate for Dawson-Austin to file motions for continuance of all the matters before the court because she
“was entitled to request more time to prepare for the special appearance hearing” that
had been set by the plaintiff Austin. Id. The court noted that Dawson-Austin’s
“request to postpone consideration of her other matters was required if the special
appearance hearing were to be delayed.” Id. Here, if First Oil did not argue the
motion to strike the amended pleadings that added Suttie, First Oil’s only option
would be to remain silent as appellees pursued their motion for continuance of the
special appearance hearing that claimed First Oil would not be prejudiced by the
delay. See id. The only way for First Oil to defend against the claim that it would not
be prejudiced by the delay was for First Oil to argue against the amended pleadings
that added Suttie. See id. Thus, under these circumstances that show that the motion
for continuance of the special appearance hearing was intertwined with the motion
that sought limited affirmative relief consistent with the special appearance, the
limited affirmative relief does not waive the special appearance. See id.
          In assessing the appropriateness of First Oil’s conduct, we also note that the
trial court’s ruling on July 9 came following the representation by appellees that they
desired that the court rule on the motion to strike “before the [special appearance]
hearing and at the latest before we had the argument on the hearing because that
affects a number of things.” Appellees told the court that they desired to know if
Suttie was going to be in the litigation because it would affect the evidence presented
at the special appearance hearing in that “it would affect two other causes of action
that we’re going to have to argue in the special appearance if you strike the second
amended petition.” Thus, according to appellees, the ruling on the motion to strike
would affect the evidence and arguments relating to the court’s determination of the
special appearance motion. See Trejo, 142 S.W.2d at 308 (noting that it is illogical
not to allow specially appearing defendant to seek trial court’s ruling on dispute that
may affect evidence presented at special appearance hearing). The motion to strike,
therefore, according to appellees’ arguments to the trial court, was related to and
consistent with the special appearance motion because the ruling would affect the
causes of action and thus would affect the merits of the special appearance motion. 
See id. 
          In further assessing the appropriateness of First Oil’s conduct, we address
appellees’ contention that the motion to strike was unnecessary for First Oil to obtain
a hearing on its special appearance. Although the trial court gave appellees a seven-day continuance, appellees motion for continuance sought delay to conduct more
discovery on Suttie beyond the seven days. First Oil explained that its motion to
strike was related to “their motion to continue where they didn’t just ask for seven
days, where they asked for a continuance to get everything[;] I am prejudiced.” We
disagree with appellees’ contention that the motion to strike was unnecessary for First
Oil to obtain a hearing on its special appearance because the record shows that the
basis for the motion for continuance to allow more discovery of Suttie had not been
ruled on by the trial court, and the motion to strike was pertinent to appellees’ claim
that the delay would not prejudice First Oil. 
          Our decision in Silbaugh also supports our conclusion that the motion to strike
did not waive the special appearance. See Silbaugh v. Ramirez, 126 S.W.3d 88 (Tex.
App.—Houston [1st Dist.] 2000, no pet.). We held that Silbaugh did not waive her
special appearance by filing a motion to strike the intervention by Wiegel and setting
the motion for oral hearing. Id. at 93–94. We noted that the motion to strike was
never heard or ruled on by the trial court. Id. However, we also said,“The motion did
not request affirmative relief inconsistent with Silbaugh’s assertion that the trial court
lacked jurisdiction; rather, the motion requested that Wiegel’s intervention be stricken
because of a lack of jurisdiction over Silbaugh.” Id. Although Silbaugh is different
from the circumstances here in that there the trial court never heard or ruled on the
motion to strike the intervention, it is instructive in its assessment that the filing of
the motion to strike and the setting of the hearing on the motion to strike was not
affirmative relief inconsistent with the special appearance. See id. Here, the motion
to strike the pleadings that added a party, like the motion to strike the intervention of
a party, does not waive the special appearance because, in both instances, the motions
were related to the invocation of the special appearance to challenge the court’s
jurisdiction over the specially appearing defendant. See id.
          We are not persuaded that the authorities on which appellees rely are applicable
to the circumstances before us. Appellees cite to Shapolsky and Biestel to support the
finding of waiver. Shapolsky v. Brewton, 56 S.W.3d 120 (Tex. App.—Houston [14th
Dist.] 2001, no pet.); Beistel v. Allen, No. 01-06-00246-CV, 2007 WL 1559840 (Tex.
App.—Houston [1st Dist.] May 31, 2007, no pet.) (mem. op.). In Shapolsky,
Shapolsky filed a motion requesting injunctive relief and sanctions against Brewton. 
Shapolsky, 56 S.W.3d at 139. The trial court signed an order denying the requested
relief before the hearing on Shapolsky’s special appearance. Id. at 139–40. The court
of appeals held that Shapolsky waived her special appearance because in her motion
she “argued issues unrelated to her special appearance prior to obtaining a ruling on
the special appearance” and “[s]he sought affirmative relief from the court when she
requested a temporary restraining order and when she requested sanctions that were
at least partially unrelated to discovery.” Id. at 140. Unlike Shapolsky, here the
motion to strike was entirely related to the motion for continuance of the special
appearance hearing. See id. 
          ATP also cites to our unpublished decision in Beistel v. Allen. Beistel, 2007
WL 1559840, at *1. Allen filed a suit seeking to terminate wage-withholding orders
for child support because both of his children were over the age of 18. Id. Beistel,
Allen’s ex-wife, resided out of state and filed a special appearance, which the trial
court granted. Id. After the trial court granted Beistel’s special appearance, Beistel’s
counsel attended the termination hearing, during which she objected to an exhibit that
Allen offered into evidence to support his position on the merits of the case. Id. at *3. 
We stated, “Counsel’s participation in the hearing was inconsistent with the assertion
in Beistel’s special appearance that the trial court lacked jurisdiction over her.” Id. 
We held, “[T]he appearance and participation of Beistel’s counsel at the termination
hearing constituted a general appearance.” Id. Unlike Beistel, here the motion to
strike the second amended pleading that added Suttie as a party is consistent with and
intertwined with the trial court’s determination of the motion for continuance filed
by appellees to delay the special appearance hearing. See id. First Oil did not
recognize that the action was properly pending in Texas by obtaining the ruling from
the trial court on the motion to strike because the motion was necessary to defend
against the claim that First Oil would not be prejudiced by delaying the hearing on
the special appearance motion. See id.
          We conclude that the record undisputedly shows that the motion to strike was
filed in response to appellees’ motion to continue the special appearance hearing, and
both parties affirmatively represented to the trial court that the issues in the motion
for continuance and motion to strike were “overlapping” and “intertwined.” See
Dawson-Austin, 968 S.W.2d at 323. We further conclude that First Oil (1) did not
invoke the judgment of the court on any question other than the court’s jurisdiction
because the ruling on the amended pleadings was related to the special appearance
motions; (2) did not recognize by its acts that an action was properly pending because
it only sought rulings necessary for the determination of the special appearance; and
(3) did not seek affirmative action from the court on any matter unrelated to the
special appearance. See Trejo, 142 S.W.3d at 306. We hold the trial court erred by
finding that First Oil waived its special appearance. 
          We sustain First Oil’s sole issue. 
Merits of the Special Appearance
          In a single cross-point, appellees contend that an alternative basis for affirming
the trial court’s order is that First Oil’s special appearance should be sustained on the
merits. Appellees assert that First Oil “is subject to the jurisdiction of Texas courts,
by virtue of the minimum contacts it purposefully established by entering into
business relationships with Texas residents, and in intentionally interfering with
contracts involving Texas residents.” The trial court specifically held that were it not
for the waiver, the court would sustain the special appearance because the underlying
facts supported the granting of the special appearance. Having determined that the
trial court erred by determining First Oil waived its special appearance, we must
address appellees’ challenge to the trial court’s determination that First Oil’s special
appearance was meritorious. 
A.      The Standard of Review
          A legal conclusion concerning the existence of personal jurisdiction is a
question of law subject to de novo review, but that conclusion must sometimes be
preceded by the resolution of underlying factual disputes. Am. Type Culture
Collection Inc. v. Coleman, 83 S.W.3d 901, 805–06 (Tex. 2002); BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). “When . . . the trial court
does not issue fact findings, we presume that the trial court resolved all factual
disputes in favor of its ruling.” Glattly v. CMS Viron Corp., 177 S.W.3d 438, 445
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Am. Type Culture Collection,
83 S.W.3d at 805–06). These implied fact findings may be challenged for evidentiary
sufficiency when a record exists. Id. (citing BMC Software, 83 S.W.3d at 794). 
However, “we review de novo if the underlying facts are undisputed or otherwise
established.” Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex.
App.—Houston [1st Dist.] 2000, pet. dism’d w.o.j.). 
B.      The Law of Special Appearance
          A plaintiff bears the initial burden of pleading allegations sufficient to bring
a non-resident defendant within the terms of the Texas long-arm statute. Am. Type
Culture Collection, 83 S.W.3d at 807. “The nonresident defendant then assumes the
burden of negating all bases of jurisdiction in those allegations.” Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007). However, the burden of
proving a jurisdictional veil-piercing theory remains with the party asserting it. PHC-Minden,L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 173 (Tex. 2007) (citing BMC
Software, 83 S.W.3d at 798). 
C.      The Law of Personal Jurisdiction
          A court may assert personal jurisdiction over a non-resident defendant if the
requirements of the Due Process Clause of the United States Constitution


 and the
Texas long-arm statute


 are both satisfied. Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); CSR, Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996). “Because the Texas long-arm statute reaches ‘as far
as the federal constitutional requirements of due process will allow,’ the statute is
satisfied if the exercise of personal jurisdiction comports with federal due process.” 
Preussag Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR, Ltd., 925 S.W.2d at
594). We thus examine only whether a Texas court’s exercise of jurisdiction over
First Oil would comport with the requirements of federal due process. See id.
          1.       Minimum-Contacts Analysis
          “Federal due process requirements are two-fold.” Id. “First, the nonresident
defendant must have purposefully established such minimum contacts with the forum
state that it could reasonably anticipate being sued there.” Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)). “If the
nonresident defendant has purposefully availed itself of the privileges and benefits
of conducting business in a state, it has sufficient contacts to confer personal
jurisdiction.” Id. (citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183). 
“Random, fortuitous, or attenuated contacts do not suffice.” Id. (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2183). 
          To assess whether a non-resident defendant has purposefully availed himself
of the privileges and benefits of conducting business in Texas, we examine three
elements. See Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 785
(Tex. 2005). First, only the defendant’s own actions may constitute purposeful
availment; a defendant may not be haled into a jurisdiction based solely on the
unilateral activities of a third party. Id. (citing Burger King, 471 U.S. at 475, 105 S.
Ct. at 2183). Second, the defendant’s acts must be purposeful, and a showing of
random, isolated, or fortuitous contacts is insufficient. Id. (citing Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)). It is the quality,
rather than the quantity of the contacts that is determinative. Silbaugh, 126 S.W.3d
at 95. Third, a defendant must seek some benefit, advantage, or profit through his
purposeful availment, because jurisdiction is based on notions of implied consent;
that is, by seeking the benefits and protections of a forum’s laws, a non-resident
consents to suit there. Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297, 100 S. Ct. 559, 567 (1980)). The purposeful availment test should
focus on “the defendant’s efforts to avail itself of the forum” and not “the form of the
action chosen by the plaintiff.” Moki Mac, 221 S.W.3d at 576. By the same token,
a non-resident may structure a transaction to avoid benefitting from a forum’s laws
and thereby avoid being subject to jurisdiction. Michiana, 168 S.W.3d at 785 (citing
Burger King, 471 U.S. at 473, 105 S. Ct. at 2182). For example, a choice-of-law
provision that provides for the application of another forum’s laws, while not
precluding a Texas court from exercising jurisdiction, “cannot be ignored when
weighing purposeful availment.” IRA Res., Inc. v. Griego, 221 S.W.3d 592, 598 (Tex.
2007) (citing Burger King, 471 U.S. at 482, 105 S. Ct. at 2187). 
          Minimum-contacts analysis is further divided into specific personal jurisdiction
and general jurisdiction. Preussag Aktiengesellschaft, 16 S.W.3d at 114. 
                    a.       Specific Jurisdiction
          A court may exercise specific personal jurisdiction over a non-resident
defendant if (1) the non-resident purposely directed its activities toward the forum
state or purposely availed itself of the privileges of conducting activities there and (2)
the controversy arises out of or is related to the non-resident’s contacts with the forum
state. Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 343 (5th Cir.
2004). The non-resident defendant’s purposeful conduct, not the unilateral acts of
the plaintiff, must have caused the contact. See Helicopteros Nacionales de
Colombia, S.A., 466 U.S. at 414, 104 S. Ct. at 1872. Although not determinative,
foreseeability is an important consideration in deciding whether the non-resident has
purposefully established minimum contacts with the forum state. Glattly, 177 S.W.3d
at 446–47. 
          Even if a non-resident has purposefully availed himself of the benefits of
conducting business in Texas, there is no specific jurisdiction over the non-resident
unless the cause of action “arises from or is related to an activity conducted within
the forum.” BMC Software, 83 S.W.3d at 796. We focus our analysis on the
relationship among the non-resident, the forum, and the litigation to determine if the
alleged liability arises from or is related to an activity conducted in Texas. Counter
Intelligence, Inc. v. Calypso Waterjet Sys., Inc., 216 S.W.3d 512, 517 (Tex.
App.—Dallas 2007, no pet. h.). The focus of the examination must be the nature of
the contacts and the “nexus” that these contacts create with the forum state. 
McDermott v. Cronin, 31 S.W.3d 617, 621–22 (Tex. App.—Houston [1st Dist.] 2000,
no pet.). The “arises from or is related to” requirement of specific personal
jurisdiction requires a “substantial connection” between the non-resident defendant’s
contacts and the “operative facts of the litigation.” Moki Mac, 221 S.W.3d at 584–85. 
That is, the non-resident’s conduct must have been purposely directed at or have
occurred in the forum and must have a “substantial connection,” resulting in the
alleged injuries, with the litigation’s operative facts. Id.; Glattly, 177 S.W.3d at 447.
 
                    b.       General Jurisdiction
          General jurisdiction does not require that the cause of action relate directly to
the defendant’s contacts with the forum. Preussag Aktiengesellschaft, 16 S.W.3d at
114 (citing CSR, Ltd., 925 S.W.2d at 595). However, to negate general jurisdiction
a defendant must show that its contacts in Texas were not “continuous and
systematic.” Id. To support general jurisdiction, the defendant’s forum activities
must have been “substantial,” which requires stronger evidence of contacts than for
specific jurisdiction. Id. 
          2.       Fair Play and Substantial Justice
          “Second, if the nonresident defendant has purposefully established minimum
contacts with the forum, the exercise of jurisdiction must comport with fair play and
substantial justice.” Preussag Aktiengesellschaft, 16 S.W.3d at 114 (citing Burger
King, 471 U.S. at 477, 105 S. Ct. at 2184 and Guardian Royal, 815 S.W.2d at 231).
D. Analysis
          Appellees allege there is jurisdiction over First Oil because (1) First Oil, Suttie,
and other related entities operated as a single business enterprise in Texas; (2) First
Oil did business in Texas and committed a tort or torts in Texas resulting in specific
jurisdiction over it; and (3) First Oil has continuing and systematic contacts with
Texas to enable the court to have general jurisdiction over it.
 
          1.      Single Business Entity
          Appellees claim that “the jurisdictional activities of Ian Suttie, of the other
related entities, and of First Oil Expro Limited are equitably attributed to be those of
First Oil” because First Oil “in conjunction with Ian Suttie and other related entities,
were at all material times and continue to be, operated as a single business enterprise,
having integrated resources to achieve a common business purpose.” Appellees
assert Suttie should be “fused” with First Oil for jurisdictional purposes because
Suttie controls of all the shares of First Oil, either individually or through another
company controlled by him, and that Suttie and First Oil should be “fused” with
another group of companies in which Suttie owned a controlling interest, the
Nautronix companies. Specifically, appellees’ theory of jurisdiction under the single
business enterprise theory is that First Oil, Expro, and the Nautronix companies were
“operated as nothing more than another one of Ian Suttie’s business arms,” and that
“Nautronix’s continuous and systematic business contacts in Texas are imputable to
First Oil through the common domination and control of both by Suttie.”
          The Texas Supreme Court recently stated, 
To “fuse” the parent company and its subsidiary for jurisdictional
purposes, the plaintiffs must prove the parent controls the internal
business operations and affairs of the subsidiary. But the degree of
control the parent exercises must be greater than that normally
associated with common ownership and directorship; the evidence must
show that the two entities cease to be separate so that the corporate
fiction should be disregarded to prevent fraud or injustice. 

PHC-Minden, 235 S.W.3d at 175 (quoting BMC Software, 83 S.W.3d at 799). That
is,there must be evidence of a “‘plus’ factor, ‘something beyond the subsidiary’s mere
presence within the bosom of the corporate family.’” Id. at 176 (citing Dickson
Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999)). 
           Here, Suttie’s role as the sole shareholder, director, and as the person who
makes hiring and firing decisions is consistent with the normal role of a shareholder
or an investor. See id. at 175. No evidence shows that the entities ceased to be
separate so that the corporate fiction must be disregarded to prevent fraud or injustice. 
See id. There is no evidence of a “‘plus’ factor, ‘something beyond the subsidiary’s
mere presence within the bosom of the corporate family.’” See id. at 176. We
conclude that appellees have not carried the burden to show that Suttie and First Oil
should be fused for jurisdictional purposes, or to show that Suttie and the Nautronix
companies should be fused for the purposes of a minimum contacts analysis. We
therefore consider only First Oil’s contacts with Texas in conducting our
jurisdictional analysis. See Preussag Aktiengesellschaft, 16 S.W.3d at 121–22
(noting that absent showing of veil-piercing theory between parent and subsidiary
corporation, subsidiary’s contacts with Texas were not attributable to parent). 
          2.       Specific Jurisdiction
          Appellees contend there is specific jurisdiction over First Oil because it did
business in Texas, “including by soliciting business in Texas, by soliciting Texas
residents for employment inside and outside the state, and/or by entering into
contracts with Texas residents, and/or by entering into contracts which are
performable in whole or in part in Texas.” Appellees also assert that First Oil
“committed a tort or torts, in whole or in part, in Texas.” 
          First Oil responds that “ATP’s allegations do not present a cognizable tortious
interference claim against First Oil that can support a finding of specific jurisdiction.” 
Specifically, First Oil asserts that appellees had “no allegations or evidence that First
Oil had any outside-the-contract communications or contact with [appellees’
financing companies].” In other words, First Oil contends that appellees are
complaining of actions taken by Suttie on behalf of Expro related only to the Joint
Operating Agreement (JOA), and that the claims are contract claims, not tort claims.
          In their brief to the trial court, appellees contend that First Oil purposefully
directed acts towards Texas that tortiously interfered with appellees’ contracts with
its financing companies. In support of this contention, appellees rely on the affidavit
of Keith Godwin, appellees’ Chief Accounting Officer, which states, in pertinent part,
. . . Suttie and First Oil began raising a series of objections to
paying First Oil’s share of the costs under the JOA, improperly
withholding payments, accusing ATP [and its finance companies] of
having other, undisclosed “sweetheart” deals, and generally not acting
in a fashion consistent with their obligations under the JOA.

                    . . . . 
 
. . . Suttie and First Oil’s tactics were successful in destabilizing
ATP’s relationships with its lenders and [its financing companies] and
ATP was forced to seek additional borrowing to “cover” First Oil’s
share of the well costs in order to maintain its obligations with [its
financing companies]—and with [its financing companies] themselves
under the financing contracts. 
 
Due to Suttie and First Oil’s intentional interference with the
[financing] contracts, [the financing companies] cancelled the
negotiations to extend the favorable financing arrangements with ATP
for the Ship Shoal 358 Field of the Gulf of Mexico. That change in
financing arrangements ultimately caused ATP damages in terms of time
and money.
 
Overall, Suttie and First Oil’s acts of interference have hurt what
once was a superior and very special relationship between ATP and [its
financing companies], and rendered the existing contracts and future
business relationships between those companies more difficult and
eliminated ATP’s ability to obtain vendor finance in this manner with
the respective parties.
 
          Because the trial court did not issue findings of fact and conclusions of law, we
must presume that the trial court resolved conflicts in the evidence against a finding
of jurisdiction over First Oil. See Glattly, 177 S.W.3d at 445 (citing Am. Type
Culture Collection, 83 S.W.3d at 805–06). Here, taking the affidavit in context and
in light of certain undisputed facts, the affidavit fails to establish that First Oil owed 
“obligations under the JOA” as stated by Godwin in his affidavit. In the quoted
portion of the affidavit, Godwin refers to “First Oil.” However, elsewhere in his
affidavit Godwin refers to both “First Oil plc” and “First Oil.” In the first paragraph
quoted above, Godwin states, “First Oil began raising a series of objections to paying
First Oil’s share of the costs under the JOA, improperly withholding payments,
accusing ATP [and its finance companies] of having other, undisclosed ‘sweetheart’
deals, and generally not acting in a fashion consistent with their obligations under the
JOA.” However, it is undisputed that First Oil was not a party to the joint operating
agreement. Expro is the party that entered into the joint operating agreement with
appellees. Thus, taking the affidavit in context and in the light that favors the trial
court’s determination, the trial court could have reasonably determined that the
affidavit’s reference to First Oil was to Expro. As noted above, we must treat First
Oil’s contacts separately from Expro’s contacts. See Preussag Aktiengesellschaft, 16
S.W.3d at 121–22.
           We conclude the evidence fails to show that First Oil’s conduct was purposely
directed at or occurred in Texas and that it has a “substantial connection” with the
litigation’s operative facts. See Moki Mac, 221 S.W.3d at 584–85; Glattly, 177
S.W.3d at 447. We hold that the trial court did not err by determining that it did not
have specific jurisdiction over First Oil.
          3.       General Jurisdiction
          Appellees contend that First Oil “has continuing and systematic contacts with
Texas, and is therefore amenable to service by a Texas court.” Appellees have not
shown that First Oil has “systematic and continuous” contacts with Texas. See
Preussag Aktiengesellschaft, 16 S.W.3d at 114 (citing CSR, Ltd., 925 S.W.2d at 595). 
In their brief, appellees do not assert that the trial court erred by determining that First
Oil’s special appearance was meritorious because First Oil had continuous and
systematic contacts with Texas. Rather, appellees assert that “First Oil was subject
to the jurisdiction of Texas courts because First Oil, Ian Suttie, and the Nautronix
group of companies operated as a single business enterprise, and that the Texas
contacts of all these entities were therefore attributable to First Oil.” However, as
noted above, we have concluded that appellees did not carry their burden of proving
a single business enterprise theory of jurisdiction. We therefore conclude that the
trial court did not err by determining that First Oil is not subject to general
jurisdiction.
          We overrule appellees’ cross-point.

Conclusion
          We reverse the trial court’s order denying First Oil’s special appearance and
render judgment dismissing the case against it for lack of personal jurisdiction.



                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.