Opinion issued July 24, 2008











In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00849-CV






HEALIX INFUSION THERAPY, INC., Appellant


V.


SOUTH FLORIDA INFECTIOUS DISEASES & TROPICAL MEDICINE
CENTERS, LLC, Appellee






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 2007-36135






MEMORANDUM OPINION

 In this accelerated, interlocutory appeal, appellant, Healix Infusion Therapy
("Healix"), challenges the trial court's order sustaining the special appearance of
appellee, South Florida Infectious Diseases & Tropical Medicine Center, LLC
("SFID"), and dismissing Healix's causes of action against SFID.

 We affirm.

Background


 Healix is a Texas corporation with its principal place of business in Fort Bend
County. (1) Dr. Juan C. Perez-Morales is an individual residing in the state of Florida,
practicing medicine in Miami, Florida. SFID is a medical practice and limited
liability corporation operating in Miami, Florida. (2) SFID was created by
Perez-Morales. SFID and Perez-Morales contracted with Healix for Healix to
manage and operate an on-site office infusion center (OIC), at SFID's offices in
Florida. (3) SFID placed orders over the phone and faxed, mailed, and emailed
documents to Healix in Texas. Although SFID initially had a pharmacist on staff in
Florida, this function was eventually replaced by ordering premixed medications from
Healix, who mixed them in Texas. 

 The contract included the following provision, "This Agreement shall be
governed, interpreted, and construed according to the laws of the State of Texas,
without giving effect to its conflict of laws provisions. This Agreement shall be
performable in Harris County, Texas." In addition to specifying Healix's
responsibilities and the parties' agreement regarding compensation, the contract also
precluded SFID from opening a competing office infusion center in certain nearby
areas in Florida.

 Healix sued SFID and Perez-Morales in Harris County for breach of contract. 
Healix alleged that SFID and Perez-Morales owed money under the contract. Healix
further alleged that SFID and Perez-Morales had breached the noncompetition
provisions of the contract through actions taken in Florida.

 In its original petition, Healix alleged that jurisdiction was proper because the
amount in controversy was within the jurisdictional limits of the district court. The
petition alleged other facts germane to Healix's claims, but it did not recite any
actions taken by SFID in Texas. 

 SFID and Perez-Morales filed a verified special appearance, denying both
general and specific jurisdiction. In particular, they denied: (1) residing in Texas;
(2) maintaining a registered agent for service of process in Texas; (3) engaging in
business, trade, or commerce in Texas (or being authorized to do so); (4) maintaining
a place of business in Texas or regularly employing Texas residents; (5) owning
property in Texas; (6) paying taxes in Texas or soliciting business in Texas;
(7) developing a substantial connection with Texas, purposefully or otherwise; and
(8) having continuing and systematic contacts with Texas.

 In its response, Healix argued that the contract's choice-of-law provision
mandated jurisdiction in Texas. Healix also argued that the numerous activities it had
conducted in Texas supported the exercise of personal jurisdiction as to SFID. Healix
attached several affidavits describing the activities in which Healix engaged. A few
days before the trial court's hearing on SFID's special appearance, Healix amended
its petition to allege the contract, the guaranty, and, in general, the Texas long-arm
statute as bases for the court to exercise personal jurisdiction. Like its predecessor,
the first amended petition did not recite any actions taken by SFID in Texas.

 After a hearing, the trial court sustained SFID's special appearance and
dismissed Healix's claims as to SFID for want of jurisdiction. (4) The trial court did not
issue findings of fact. Healix appealed, arguing in three issues (5) that the trial court
erred because: (1) SFID did have sufficient minimum contacts to subject it to personal
jurisdiction in Texas; (2) exercising personal jurisdiction would not offend traditional
notions of fair play and substantial justice; and (3) the parties' contract waived
SFID's objection to personal jurisdiction.

Standard of Review

 The existence of personal jurisdiction is a question of law reviewed de novo
by this Court. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789 (Tex. 2002). 
However, this question must sometimes be preceded by resolving underlying factual
disputes. Id. at 794. When, as here, the trial court does not issue fact findings, we
presume that the trial court resolved all factual disputes in favor of its ruling. Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).Personal Jurisdiction

 "Texas courts may assert personal jurisdiction over a nonresident defendant
only if the Texas long-arm statute authorizes jurisdiction and the exercise of
jurisdiction is consistent with federal and state due process standards." Id. (citing
Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991)); see Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045
(Vernon Supp. 2007) (Texas's long-arm statute). The long-arm statute allows Texas
courts to exercise jurisdiction over a nonresident defendant that "does business" in
the state. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon Supp. 2007). 

 In addition to other acts that may constitute doing business, a
nonresident does business in this state if the nonresident:


 (1) contracts by mail or otherwise with a Texas resident and either
party is to perform the contract in whole or in part in this state;


 (2) commits a tort in whole or in part in this state; or


 (3) recruits Texas residents, directly or through an intermediary
located in this state, for employment inside or outside this state.

Id.

 This list, however, is not exhaustive. BMC Software, 83 S.W.3d at 795. The
Texas Supreme Court has held that "section 17.042's broad language extends Texas
courts' personal jurisdiction as far as the federal constitutional requirements of due
process will permit." Id. (citation omitted).

 Initially, the plaintiff bears the burden of pleading allegations sufficient to
bring a nonresident defendant within the terms of the Texas long-arm statute. Am.
Type Culture Collection, 83 S.W.3d at 807. However, when a nonresident defendant
files a special appearance, that defendant assumes the burden of negating all bases of
personal jurisdiction that the plaintiff has alleged. Id.

 Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the
forum state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Id. at 806 (citing Int'l Shoe Co. v. Washington, 326
U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). A nonresident defendant's minimum
contacts must derive from purposeful availment: a nonresident defendant must have
"purposefully availed" itself of the privileges and benefits of conducting business in
the foreign jurisdiction to establish sufficient contacts with the forum to confer
personal jurisdiction. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
474-76, 105 S. Ct. 2174, 2183-84 (1985)); Xenos Yuen v. Fisher, 227 S.W.3d 193,
200 (Tex. App.--Houston [1st Dist.] 2007, no pet.). An act or acts "by which the
defendant purposefully avails itself of the privilege of conducting activities" in Texas
and "thus invok[es] the benefits and protections" of Texas law, constitute sufficient
contact with Texas to confer personal jurisdiction. Michiana Easy Livin' Country,
Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005) (quoting Hanson v. Denckla, 357
U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

 We consider three elements of purposeful availment. See Michiana Easy Livin'
Country, 168 S.W.3d at 785; see also First Oil PLC v. ATP Oil & Gas Corp., No.
01-07-00703-CV, 2008 WL 2186781 (Tex. App.--Houston [1st Dist.] May 22, 2008,
no pet.). First, we consider only the defendant's own actions, not those of the
plaintiff or any other third party. Michiana Easy Livin' Country, 168 S.W.3d at 785;
First Oil PLC, 2008 WL 2186781, at *12; see also U-Anchor Advertising, Inc. v.
Burt, 553 S.W.2d 760, 762-63 (Tex. 1977) (quoting Hanson, 357 U.S. at 253, 78 S.
Ct. at 1240 (1958) ("The unilateral activity of those who claim some relationship with
a non-resident defendant cannot satisfy the requirement of contact with the forum
State. The application of that rule will vary with the quality and nature of the
defendant's activity, but it is essential in each case that there be some act by which
the defendant purposefully avails itself of the privilege of conducting activities within
the forum State, thus invoking the benefits and protections of its laws."))

 Second, the activities must be purposeful, not random, isolated, or fortuitous. 
Michiana Easy Livin' Country, 168 S.W.3d at 785; First Oil PLC, 2008 WL
2186781, at *12. "It is the quality rather than the quantity of contacts that is
determinative." First Oil PLC, 2008 WL 2186781, at *12 (emphasis in original). 
Third, the defendant must seek some benefit, advantage, or profit by virtue of its
activities in the proposed forum state, because this element is based on the notion of
implied consent. Michiana Easy Livin' Country, 168 S.W.3d at 785; First Oil PLC,
2008 WL 2186781 at *12. 

 "A choice-of-law provision is a consideration." Preussag Aktiengesellschaft
v. Coleman, 16 S.W.3d 110, 125 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd
w.o.j.)); see Burger King, 471 U.S. at 482, 105 S. Ct. at 2187; see also Project Eng'g
USA Corp. v. Gator Hawk, Inc., 833 S.W.2d 716, 722 (Tex. App.--Houston [1st
Dist.] 1992, no writ) (contract containing choice-of-law and choice-of-forum clauses). 
However, standing alone, it does not suffice to confer jurisdiction. Preussag
Aktiengesellschaft, 16 S.W.3d at 125; see Burger King, 471 U.S. at 482, 105 S. Ct.
at 2187. "Nor does it indicate a voluntary submission to the personal jurisdiction of
the state's courts in the absence of any express understanding to that effect." 
Preussag, 16 S.W.3d at 125.

 Our jurisdictional analysis is further divided into general and specific personal
jurisdiction. CSR, Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). General
jurisdiction will attach when "a defendant's contacts in a forum are continuous and
systematic permitting the forum to exercise personal jurisdiction over the defendant
even if the cause of action did not arise from or relate to activities conducted within
the forum state." Id. To support general jurisdiction, the defendant's forum activities
must have been "substantial," which requires stronger evidence of contacts than for
specific personal jurisdiction. Preussag Aktiengesellschaft, 16 S.W.3d at 114.

 Specific jurisdiction lies when the defendant's alleged liability arises from or
is related to an activity conducted within the forum. BMC Software, 83 S.W.3d at
796. "For a nonresident defendant's forum contacts to support an exercise of specific
jurisdiction, there must be a substantial connection between those contacts and the
operative facts of the litigation." Moki Mac River Expeditions v. Drugg, 221 S.W.3d
569, 585 (Tex. 2007). This requirement assesses "the strength of the necessary
connection between the defendant, the forum, and the litigation." Id. 

Discussion

 In its first amended petition, Healix alleges that jurisdiction is proper as to
SFID because it purposefully availed itself of the privileges and benefits of
conducting business in Texas by (1) executing the contract between the parties,
(2) expressly agreeing to a contract provision stating that the contract would be
"performable" in Harris County, and (3) consenting to the application of Texas law
in any controversy arising out of the contract. At the hearing, Healix also alleged that
SFID communicated with Healix by telephone, facsimile, mail, and email on an
ongoing basis. Healix repeatedly detailed its own business activities in Texas in its
petition, response to SFID's special appearance, and arguments to the trial court. 

 SFID did enter into a contract "by mail or otherwise" with Healix, a Texas
resident, and Healix performed some actions regarding the contract in Texas, so the
long-arm statute is satisfied. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon
Supp. 2007). However, this does not end our inquiry. The exercise of personal
jurisdiction is appropriate here only if it would comport with due process
requirements. Therefore, we must consider whether SFID has established the
requisite minimum contacts and if the exercise of jurisdiction comports with
traditional notions of fair play and substantial justice. As the trial court correctly
noted throughout the hearing, we must look only at what SFID did in Texas, and we
do not consider Healix's actions in determining whether the personal jurisdiction
exists as to SFID. See Michiana Easy Livin' Country, 168 S.W.3d at 784-85. We
will consider only whether specific jurisdiction exists, because Healix did not argue
in favor of general jurisdiction in its briefing in our court. 

Minimum Contacts

 Healix first alleged that jurisdiction was proper in Texas because SFID entered
into a contract with Healix, a Texas corporation. As Healix argued to the trial court,
this contract required SFID to communicate with Healix, which it did through phone
calls, email, mail, and facsimile. (6) These contacts do not satisfy the minimum contacts
requirement for Texas jurisdiction. See, e.g., Ashdon, Inc. v. Gary Brown & Assocs.,
Inc., No. 01-06-01186-CV, 2008 WL 2209203, at *10 (Tex. App.--Houston [1st
Dist.] May 29, 2008, no pet.) (holding that defendant lacked sufficient minimum
contacts to establish personal jurisdiction despite contracting with Texas plaintiff
over many years and communicating by phone, email, fax, or mail, traveling to Texas,
and being paid by checks drawn on Texas account); Alenia Spazio, S.p.A. v. Reid, 130
S.W.3d 201, 213 (Tex. App.--Houston [14th Dist.] 2003, pet. denied) (contracting
with Texas entity and numerous telephone and facsimile communications with people
in Texas relating to alleged contract do not establish minimum contacts);
TeleVentures, Inc. v. Int'l Game Tech., 12 S.W.3d 900, 908-10 (Tex. App.--Austin
2000, pet. denied) ("Minimum contacts may not be satisfied by merely engaging in
communications with a Texas corporation during performance of a contract.").

 Next, although the contract states that it would be "performable" in Harris
County, performance under the contract occurs in Florida. The noncompetition
provision and Exhibit A, describing premises, both refer to Miami-Dade County or
counties contiguous thereto. Both the first and second amendments to the contract
note that the SFID or its predecessor, Juan C. Perez Morales, M.D., P.A., are Florida
professional associations. The contract was for operational and managerial services
to be provided to the office infusion center located in Florida. (7) These facts, which we
view in a light most favorable to the trial court's ruling, do not weigh in favor of
personal jurisdiction of SFID. See Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d
309, 312 (5th Cir. 2007) ("[A] plaintiff's unilateral activities in Texas do not
constitute minimum contacts where the defendant did not perform any of its
obligations in Texas, the contract did not require performance in Texas, and the
contract is centered outside of Texas."); see also Tabor, Chhabra & Gibbs, P.A. v.
Medical Legal Evaluations, Inc., 237 S.W.3d 762, 774 (Tex. App.--Houston [1st
Dist.] 2007, no pet.). 

 Similarly, the choice-of-Texas-law provision, which states that the contract
shall be "governed, interpreted, and construed according to the laws of the State of
Texas," does not confer jurisdiction, in the absence of any indication that SFID
intended to voluntarily submit to personal jurisdiction in Texas. See Preussag
Aktiengesellschaft, 16 S.W.3d at 125. No such indication is present in the record.

Substantial Relationship to Litigation

 Although we conclude that SFID's alleged contacts were insufficient to satisfy
the minimum-contacts/personal jurisdiction analysis, we also note that the alleged
contacts are not substantially connected to the operative facts of the litigation. At
best, Healix alleged that SFID communicated with it in Texas. However, Healix's
petition alleges that SFID breached the contract by failing to pay monies owed as a
result of the activities conducted at the office infusion center in Florida as well as 
by operating a competing office infusion center in Florida, in contravention of the
contract. SFID's alleged contacts with Texas, therefore, are not substantially
connected to the operative facts of the litigation. See Moki Mac River Expeditions,
221 S.W.3d at 584-85. We conclude that the evidence fails to show that SFID's conduct: (1) was
purposely directed at or occurred in Texas; (2) has a "substantial connection" to the
litigation's operative facts; and (3) satisfies federal due process requirements. 
Therefore, we need not consider whether the exercise of jurisdiction comports with
traditional notions of fair play and substantial justice. We hold that the trial court did
not err by sustaining SFID's special appearance. 




Conclusion

 We affirm the order of the trial court.


 

 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Alcala, and Hanks.


1. Healix was located in Harris County when the parties initially signed their contract, but
Healix later moved to Fort Bend County.
2. In connection with the contract, Perez-Morales signed an individual guaranty of the contract
with Healix. This guaranty provided, in part, that "THE STATE COURTS IN THE STATE OF
TEXAS SHALL HAVE NONEXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY
CLAIMS OR DISPUTES WITH RESPECT TO THIS GUARANTY . . . ." The trial court overruled
his special appearance. Although he is listed as an appellee, the trial court's jurisdiction over Perez-Morales is not an issue in this case.
3. The initial contract was with Juan C. Perez Morales, M.D., P.A. The name of the physician
association's practice was changed to South Florida Infectious Diseases and Tropical Medicine
Center, LLC in the first amendment to the parties' contract.
4. The trial court overruled Perez-Morales's special appearance, therefore, he is not an appellee
here.
5. "Point of Error One: The District Court erred in ruling that SFID did not have sufficient
minimum contacts to subject SFID to personal jurisdiction in Harris County, Texas.

 Point of Error Two: The District Court erred in ruling that exercising personal jurisdiction
over SFID in Harris County, Texas would not comply with traditional notions of fair play and
substantial justice.

 Point of Error Three: The District Court erred in ruling that the forum selection provision in
the HATS Agreement did not waive SFID's objection to personal jurisdiction in Harris County."
6. Healix also argues that SFID transferred money electronically to an account in Houston as
part of its performance of the contract. In an affidavit attached to Healix's response to the special
appearance, Healix employee Joseph Gallegos testified, "Pursuant to the [parties' contract], Perez-Morales and SFID authorized electronic transfer of funds from their accounts to Healix's operating
account in Harris County, Texas. But the contract provided that Healix "shall have the right to
electronically transfer funds from the OIC Account to [Healix's] bank account to pay its
Management Fee" and other expenses. Whether the Healix or SFID carried out the electronic fund
transfers is, therefore, a question of fact, and we presume the trial court decided that this in favor of
its judgment, i.e., that these actions could not be imputed to SFID. See Am. Type Culture Collection,
83 S.W.3d at 806.
7. Even Healix concedes that it moved from Harris County to Sugar Land, in Fort Bend
County, Texas, during the time the parties' contract was in effect.