

# NUMBER 13-11-00195-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CELESTE GRYNBERG AND JACK J. GRYNBERG
D/B/A GRYNBERG PETROLEUM,                          Appellants,

v.

M-I L.L.C.,                                        Appellee.

## On appeal from the 190th District Court
## of Harris County, Texas.

# OPINION[1]

### Before Justices Rodriguez, Garza, and Benavides
### Opinion by Justice Rodriguez

---

[1] This case is before this Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

This is an appeal from a summary judgment entered in a bill of review proceeding. Appellants Celeste Grynberg and Jack J. Grynberg d/b/a Grynberg Petroleum appeal the denial of their petition for bill of review, which sought to overturn a no-answer default judgment rendered against them and in favor of appellee M-I L.L.C. By nine issues, which we reorganize as seven, the Grynbergs contend that (1) the trial court lacked jurisdiction because they are nonresident individual defendants and were not served at their home; (2) if service was proper at their home office address, the trial court erred in granting summary judgment in favor of appellee M-I and against Celeste because the evidence established that Celeste was never properly served at her home office; (3) the trial court erred in granting M-I summary judgment because the filing of a motion for new trial was a special appearance that challenged personal jurisdiction and not a general appearance; (4) the trial court erred in granting M-I summary judgment because there was prima facie evidence of a meritorious defense (no minimum contacts in Texas); (5) neither res judicata nor estoppel barred the minimum-contacts defense; (6) M-I offered no argument or evidence that conclusively established that there are no fact issues as to the second and third elements of the bill of review; and (7) the trial court erred in awarding M-I attorneys' fees. We affirm in part, and we reverse and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During 2006 and 2008, Grynberg Petroleum worked on a drilling project in Colorado. Grynberg Petroleum is a d/b/a for Celeste and Jack; Jack acts as its manager, and Celeste owns all Grynberg Petroleum properties. M-I provided services and drilling fluids on the Colorado drilling project and extended credit for the services and

drilling fluids. M-I sent invoices for this work to 5299 DTC Boulevard, Suite 500, Greenwood Village, Colorado 80111.

On January 27, 2009, M-I filed a lawsuit in Texas against Jack and Celeste on an unpaid account. Pursuant to the long-arm statute, M-I attempted service on Jack and Celeste at the 5299 DTC Boulevard address. In its petition, M-I described this address as Jack's and Celeste's "home address or home office." The Texas Secretary of State mailed the process documents to the address M-I provided and received a return receipt. Neither Jack nor Celeste answered. M-I filed a motion for default judgment. On July 17, 2009, the district court granted M-I's motion and awarded M-I $677,432.24.

On August 7, 2009, following the entry of the no-answer default judgment against them, the Grynbergs filed a timely motion for new trial, urging that (1) their failure to answer was not intentional or the result of conscious indifference; (2) they had a meritorious defense; and (3) setting aside the judgment would not cause delay or injure M-I. *See* TEX. R. CIV. P. 329b; *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. 1939). Without a hearing, the motion was overruled by operation of law on September 30, 2009. *See id.* at R. 329b(c). The Grynbergs did not appeal.

The Grynbergs filed a collateral attack in a Colorado court, challenging personal jurisdiction in Texas. On October 5, 2010, after a Colorado court denied them relief, the Grynbergs filed a bill of review in Texas. In their petition, they asserted the following: (1) Celeste "was not served with citation as required by law" because "[t]he address identified as Ms. Grynberg's 'home address or home office' in M-I L.L.C.'s Original Petition—5299 DTC Boulevard, Suite 500, Greenwood Village, Colorado 80111—does

3

not identify a location where Ms. Grynberg resides or maintains any type of office"; and (2) M-I "failed to include any allegations in its pleading sufficient to invoke personal jurisdiction over either Celeste C. Grynberg or Jack J. Grynberg" because none of the alleged facts "establish that either [Celeste or Jack] have contacts with Texas sufficient to create personal jurisdiction." The Grynbergs filed a motion and then an amended motion for summary judgment, expanding the arguments made in their motion for new trial and attaching Jack's affidavit and Celeste's affidavit, business invoices and statements, and pleadings in support of their motion.

M-I filed a counter-motion for summary judgment asserting, among other things, that (1) the trial court had jurisdiction over Celeste because the 5299 DTC Boulevard address was her home office address; (2) the Grynbergs had minimum contacts in Texas and the Grynbergs made a general appearance when they filed their motion for new trial; (3) the Grynbergs made no allegations of fraud, accident, or wrongful act by M-I, or of any official mistake, which are necessary elements to show a right to a bill of review; and (4) the Grynbergs failed to pursue their remedy at law, by either setting their motion for new trial for hearing or appealing the grant of the default judgment, and are therefore barred from asserting the equitable remedy of bill of review.[2] M-I attached thirty-three exhibits and a thirty-fourth supplemental exhibit. The exhibits included, among other things, business documents filed in Colorado, pleadings filed in other litigation, and invoices and statements sent to Grynberg Petroleum. The Grynbergs responded to M-I's

---

[2] M-I also filed a response to the Grynbergs' summary judgment motion incorporating its counter-motion and all exhibits. In its response, M-I prayed for "reasonable and necessary attorney fees and costs in defending against the Grynbergs' Petition for Bill of Review."

4

counter-motion, again urging arguments made in their amended summary-judgment motion and also asserting that they were not barred from seeking equitable relief in this bill of review by the motion for new trial they had previously filed.

On February 14, 2011, the trial court in Texas denied the Grynbergs' petition for bill of review and their amended motion for summary judgment. Without stating the grounds upon which it made its ruling, the trial court granted M-I's counter-motion for summary judgment and awarded M-I attorneys' fees.[3] The Grynbergs appeal from this judgment.

## II. LONG-ARM SERVICE OF PROCESS ON NONRESIDENT INDIVIDUAL AT "HOME OR HOME OFFICE"

By their first issue, the Grynbergs argue that service under the long-arm statute is proper only at the home address of a nonresident individual. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a) (West 2008). They claim that because they were not served at home, the trial court did not have personal jurisdiction over them.[4] M-I challenges this interpretation and asserts that section 17.045(a) provides two equal alternatives to serve

---

[3] M-I subsequently attempted to collect the judgment from Celeste by executing a notice of levy and seizure and a certificate of levy against real property she owned. *See In re Marriage of Hunt*, 909 P.2d 525, 529 (Colo. 1995) (en banc) (setting out that Colorado is not a "community property" state). On November 30, 2010, the Grynbergs filed an application for injunctive relief. The Texas court denied their application for a temporary restraining order, and on December 15, 2010, it denied their application for a temporary injunction because they had not met their burden to show a probable right to relief. Ultimately, to protect Celeste's property, the Grynbergs posted a cash supersedeas bond with the Texas court for $950,000.00.

[4] On April 17, 2012, M-I filed a motion to strike and an objection to the Grynbergs' April 12, 2012 letter brief, which was filed after briefing had been completed and approximately one week before oral argument. In their April 12 letter brief, the Grynbergs argued, for the first time, that the trial court did not have personal jurisdiction over them because they were not served at home. On April 18, 2012, we denied M-I's motion to strike the Grynbergs' April 12 letter brief. Because this jurisdictional question of defective service can be raised for the first time on appeal, *see Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990); *see also Houston Precast, Inc. v. McAllen Constr., Inc.*, No. 13-07-135-CV, 2008 Tex. App. LEXIS 7129, at *4 (Tex. App.—Corpus Christi Sept. 25, 2008, no pet.) (mem. op.), and because "[t]here are no particular preservation or briefing requirements imposed on a party when challenging a court's jurisdiction," *H. E. Butt Grocery Co. v. Bay, Inc.*, 808 S.W.2d 678, 679 (Tex. App.—Corpus Christi 1991, writ denied), we now overrule M-I's objection that the Grynbergs failed to preserve this issue.

a nonresident—at the defendant's "home" or at the defendant's "home office." *See id.* We agree with M-I.

## A.    Applicable Law and Standard of Review

"When a defendant has not answered, a trial court acquires jurisdiction over that defendant solely on proof of proper service." *Jarvis v. Feild*, 327 S.W.3d 918, 926 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Furst v. Smith*, 176 S.W.3d 864, 868, 868 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Houston Precast, Inc. v. McAllen Constr. Inc.*, No. 13-07-135-CV, 2008 Tex. App. LEXIS 7129, at *3 (Tex. App.—Corpus Christi Sept. 25, 2008, no pet.) (mem. op.)). The Grynbergs' claim of defective service of process is a challenge to the court's personal jurisdiction and, in this no-answer default-judgment proceeding, can be raised for the first time on appeal. *Jarvis*, 327 S.W.3d at 926.

If resolution of an issue requires the court to construe statutory language, we apply a de novo standard of review to the statute's construction. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *CTL/Thompson Texas, LLC v. Morrison Homes*, 337 S.W.3d 437, 441 (Tex. App.—Fort Worth 2011, pet. denied). In construing section 17.045(a), our primary goal is to ascertain and give effect to the legislature's intent as expressed by the words of the statute and to apply that intent according to the statute's purpose. *See MCI Sales*, 329 S.W.3d at 500; *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) (op. on reh'g); *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010); *Entergy Gulf States*, 282 S.W.3d at 437; *see also* TEX. GOV'T CODE ANN.

6

§ 312.005 (West 2005).

We give the words of the statute their plain and common meaning unless the statute defines the words otherwise, a different meaning is apparent from the context, or using the common meaning would lead to absurd results. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008); *see* TEX. GOV'T CODE ANN. § 312.002 (West 2005) (providing that "words shall be given their ordinary meaning" when construing civil statutes in Texas); *see also id.* § 311.011(a) (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Fresh Coat, Inc.*, 318 S.W.3d at 901. "[E]very word in a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)). When the words of the statute are clear, they are determinative. *Entergy Gulf States*, 282 S.W.3d at 437.

**B.      Analysis**

Section 17.045(a) of the long-arm statute provides:

> If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's *home or home office* and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a) (emphasis added). "[H]ome or home office" is written in the disjunctive. The ordinary meaning of "or" is that it is "used as a function word to indicate an alternative." Merriam-Webster Online Dictionary, *available*

7

*at* http://www.merriam-webster.com/dictionary/or (last visited Dec. 14, 2012).

Considering the disjunctive nature of the words, we find the plain language of the long-arm statute to be clear. For purposes of service, according to its plain language, the statute allows a nonresident defendant to be served, through the secretary of state, at the nonresident's home or at the nonresident's home office. In other words, if the secretary of state is served with documents that contain a statement of the name and address of either the nonresident's home or his home office, service is proper under either alternative address pursuant to section 17.045(a). TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a). We find nothing in the substituted-service provisions of the statute to indicate that the Legislature intended to alter this general principle. And a different meaning is not apparent from the context. *See FKM P'ship, Ltd.*, 255 S.W.3d at 633. When every word in a statute is presumed to have been used for a purpose, to conclude otherwise would require this Court to eliminate the words "or home office" from the statute when a plaintiff sues an individual nonresident. *See Tex. Workers' Comp. Ins. Fund*, 35 S.W.3d at 593. The plain meaning of this language does not lead to absurd results.[5] *See FKM P'ship, Ltd.*, 255 S.W.3d at 633; *Entergy Gulf States*, 282 S.W.3d at 437. Rather, it is reasonable and possible to give effect to "or home office" in construing this statute. *See id.*

The Grynbergs contend that, under section 17.045(a), when a nonresident

---

[5] The Grynbergs contend that M-I's position "creates practical problems and leads to absurd results" because, "[f]or example, if an individual can be served at an office address, any nonresident employee of a company—from the CEO to a file clerk—could be served by sending the petition via certified mail to the company's receptionist . . . ." However, the Grynbergs' argument is too broad, equating an office address to a home office address. Therefore, we are not persuaded by this argument.

8

individual has been sued, the plaintiff must provide a statement of the individual's home address to the secretary of state, and a copy of the process must be mailed to the individual at the home address provided. They cite the following Texas cases as authority for this contention: (1) *Chaves v. Todoro*, 770 S.W.2d 944, 945-46 (Tex. App.—Houston [1st Dist.] 1989, no writ) ("We interpret sec. 17.045(a) to mean that when an individual nonresident defendant has been sued, a statement of the individual's home address must be provided to the Secretary of State, and a copy of the process is to be mailed to that home address."); (2) *Norwood, III v. Hudson's Grill International, Inc.*, No. 07-99-0164-CV, 2002 Tex. App. LEXIS 7493, at *1-6 (Tex. App.—Amarillo Oct. 17, 2002, no pet.) (not designated for publication) (relying on *Chaves* and interpreting section 17.045(a) the same); and (3) *Lissak v. Health International, Inc. and Houston Imaging Center, Inc.*, No. C14-89-00489-CV, 1990 Tex. App. LEXIS 617, at *1-3 (Tex. App.—Houston [14th Dist.] Mar. 22, 1990, no writ) (not designated for publication) (relying on *Chaves* and setting out that "[t]his statute has been interpreted as requiring that, when an individual nonresident nonresident defendant has been sued, a statement of the individuals home address must be provided to the Secretary of State, and a copy of the process is to be mailed to that home address"). We do not find these cases to be precedential.

*Chaves* is from the Houston First District Court of Appeals and *Norwood* is from the Amarillo Court of Appeals, both sister courts, and we are not bound to follow a decision of another court of appeals. *See Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 206 n.17 (Tex. App.—Austin 2008, no pet.). *Norwood* is also a pre-2003 unpublished

9

opinion with no precedential value. *See* TEX. R. APP. P. 47.7(b) (providing that an opinion in a civil case issued before January 1, 2003, without being designated for publication, has no precedential value).

The Houston Fourteenth District Court of Appeals, which is the transferor court in this case, has also determined that an unpublished pre-2003 case from its own court has no precedential value. *See Alcala-Garcia v. City of La Marque*, No. 14-12-00175, 2012 Tex. App. LEXIS 9062, at *18-19 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet. h.) (mem. op.) (setting out that *Vernagallo v. Freeman,* No. 14-99-00584-CV, 2000 Tex. App. LEXIS 6424 (Tex. App.—Houston [14th Dist.] Sept. 21, 2000, no pet.) (not designated for publication), a Fourteenth District Court of Appeals case, is a pre-2003 unpublished opinion with no precedential value) (citing TEX. R. APP. P. 47.7(b))*; see also Ferguson v. State*, 335 S.W.3d 676, 686 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("We decided a similar case in *Walton v. State*, 2007 Tex. App. LEXIS 1847, 2007 WL 706582 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (mem. op.). Although without precedential value, we find the reasoning in the decision persuasive and adopt it here."); *Carillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. refused) ("By stating that unpublished opinions may be cited but have no precedential value, we perceive the intent of the rule to be that a court has no obligation to follow such opinions."); *Lopez v. State*, No. 14-10-00033-CR, 2010 Tex. App. LEXIS 9923, at *7 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op., not designated for publication) (citing TEX. R. APP. P. 47.7(a)) ("*Delgado* has no precedential value because it is an unpublished opinion."). Because we are required to decide this case in accordance with precedent of

10

the transferor court, we conclude that *Lissak*, a pre-2003 unpublished opinion, has no precedential value, and we are not bound by it.[6]   *See* TEX. R. APP. P. 41.3; *see id.* at R. 47.7(b).

Even if *Lissak* constituted binding authority, the case is factually distinguishable. The plaintiff sued a corporation and Lissak, an employee of that corporation who was served as an individual. *Lissak*, 1990 Tex. App. LEXIS 617, at *1-2. Service was not attempted at either Lissak's home or his home office. Rather, the plaintiff gave the secretary of state an old business address, and "the affidavit of the Secretary of State state[ed] that the copy of process mailed to Lissak at his former business address was returned marked 'Unknown'." *Id.* at *3. Finally, although the *Lissak* Court concluded that "[a]ppellees failed to comply strictly with the requirements of [s]ection 17.045(a)," interestingly, it also noted that "the record affirmatively establish[ed] that Lissak did not receive notice of the action against him." *Id.*

The Grynbergs also rely on three federal cases, including *Leedo Cabinetry v. James Sales and Distribution, Inc.,* 157 F.3d 410, 411-14 (5th Cir. 1998); *Fields v. Keith*, 174 F. Supp. 2d 464, 483 (N.D. Tex. 2001) (mem. op. & order); and *Salzgitter Mannesmann International (USA) Inc., v. Alexander Steel Sales, Inc.*, No. 4:10-CV-4900, 2011 U.S. Dist. LEXIS 52098, at *4-7 (S.D. Tex. May 26, 2011) (mem. op. & order). Each federal case is based on the proposition set out in *Chaves,* which we are not bound

---

[6] Because the issue is not directly before us in this matter, we express no opinion herein regarding the interaction of Texas Rule of Appellate Procedure 47.7 and our precedent under principles of stare decisis.

11

to follow, and therefore, we decline to be guided by these federal cases.

Having interpreted section 17.045(a) to mean that service on either the home or the home office of a nonresident individual is proper under the long-arm statute, we overrule the Grynbergs' first issue.

### III. SERVICE OF PROCESS ON CELESTE AT HER HOME OFFICE

By the second issue, Celeste complains that the trial court erred in denying her amended motion for summary judgment and in granting M-I's counter-motion against her because the evidence established that she was never properly served at her home office, and thus, the trial court lacked personal jurisdiction over her. M-I does not claim that it served Celeste at her home address, and Jack makes no assertion that he was not served at 5299 DTC Boulevard or that this address was not his home office. *See* TEX. PRAC. & REM. CODE ANN. §§ 17.041, 17.045(a) (West 2008). Therefore, our analysis of this second issue applies only to Celeste and only to whether the evidence establishes that 5299 DTC Boulevard is Celeste's home office address.[7]

Celeste asserts that her affidavit that was attached to her summary judgment motion conclusively establishes that 5299 DTC Boulevard, the address M-I provided to the secretary of state, is not her home office. She argues that her affidavit is uncontradicted by other evidence regarding whether 5299 DTC Boulevard is her home

---

[7] We note at the outset of this discussion that Celeste did not waive her defective-service challenge by a general appearance, if any. A general appearance only waives defects in service when the appearance precedes any action of the court, which the appearance validates. *See Dan Edge Motors, Inc. v. Scott*, 657 S.W. 2d 822, 824 (Tex. App.—Texarkana 1983, no writ). In other words, because this is a no-answer default judgment and because Celeste appeared after the default judgment was entered, her general appearance, if any, did not waive her defect-in-service complaints. *See id.*; *see also Uche v. Igwe*, No. 05-11-570-CV, 2012 Tex. App. LEXIS 5457, at *6-7 n.1 (Tex. App.—Dallas July 10, 2010, no pet.) (mem. op.).

12

office address, or if it is contradicted, the affidavit raises a fact question. In response, M-I argues that Celeste's affidavit fails to raise a genuine and material fact issue because it is conclusory and uncorroborated. M-I also asserts that the affidavit is not proper summary judgment evidence because it is a sham affidavit. M-I further contends that its summary-judgment evidence establishes that Celeste was served at her home office as a matter of law.

## A. Standard of Review

An order on a traditional motion for summary judgment is reviewed de novo on appeal. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007)

> When both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered.

*Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012) (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

## B. Analysis

It is undisputed that M-I recited 5299 DTC Boulevard as Celeste's "home address or home office" in its petition. By doing so, M-I complied with the long-arm statute's rules of service. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a) (providing that the copies of process for a nonresident served on the secretary of state "shall contain a statement of the name and address of the nonresident's home or home office"); *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) (explaining that Texas law requires strict compliance with its rules of service). Therefore, the secretary of state used 5299 DTC Boulevard as

13

Celeste's home office address for service of process. It is further undisputed that this address is not Celeste's home address. The question, then, for our review is whether the summary judgment evidence established that 5299 DTC Boulevard is Celeste's home office as a matter of law or whether there is a fact issue regarding Celeste's home office address.

### 1. Celeste's Summary Judgment Evidence

Celeste's affidavit, attached to her amended motion for summary judgment, averred the following: "I do not have, nor have I had in the past, a home or office at 5299 DTC Boulevard, Suite 500, Greenwood Village, Colorado 80111. A citation was apparently sent by the Texas Secretary of State to that address, but it was not forwarded to me at my home or home office."

### a. Conclusory

For the first time on appeal, M-I argues that Celeste's affidavit is conclusory and unsupported by facts. This challenge is properly before this Court because an objection to a conclusory affidavit—a substantive defect—may be raised for the first time on appeal. *See Laidlaw Waste Sys. (Dallas) v. City of Wilmer*, 904 S.W.2d 656, 661 (Tex. 1995); *AMS Const. v. Warm Springs Rehab. Found.*, 94 S.W.3d 152, 156 (Tex. App.—Corpus Christi 2002, no pet.).

Summary judgment may be granted on affidavits from interested parties; but such evidence must be clear, positive, direct, credible, free from contradictions, and susceptible of being readily controverted. TEX. R. CIV. P. 166a. Conclusory statements in affidavits do not constitute competent summary-judgment evidence. *See Tex.*

14

*Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (per curiam); *Hidalgo v. Surety Sav. and Loan Ass'n*, 487 S.W.2d 702, 703 (Tex. 1972) (per curiam).

In this case, Celeste's affidavit is clear, positive, and direct. *See* TEX. R. CIV. P. 166a. Celeste clearly states that she has never had a home or an office at the 5299 DTC Boulevard address and acknowledges that she does have a home office, although the citation was not forwarded to that address. It is also apparent that Celeste's affidavit is credible. *See id.* Celeste states that she has "personal knowledge of [the location of her home office] based on [her] participation in the events described." *See id.* at R. 166a(f) (requiring that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). It is also undisputed that Grynberg Petroleum is a d/b/a for Celeste and Jack, and although Jack acts as its manager, Celeste owns all Grynberg Petroleum properties. Moreover, Celeste's affidavit is free from contradictions and is susceptible of being readily controverted. *See id.* In fact, M-I filed controverting evidence in support of its counter-motion for summary judgment, evidence it claims establishes the 5299 DTC Boulevard address is Celeste's home office address. Based on this analysis, we cannot conclude that Celeste's affidavit is conclusory. Rather, it is competent summary-judgment evidence.

### b. Uncorroborated

M-I further asserts that the averments in Celeste's affidavit are uncorroborated. However, M-I did not preserve this argument for appeal because it did not object on this

15

basis to the trial court. *See* TEX. RULE APP. P. 33.1. Instead, M-I filed controverting evidence challenging Celeste's affidavit. *See* TEX. R. CIV. P. 166a(c), (f); *Longoria v. Texaco, Inc.*, 649 S.W.2d 332, 335-36 (Tex. App.—Corpus Christi 1983, no writ) ("[T]he uncorroborated affidavit of an interested party or witness will support a summary judgment in the absence of a controverting affidavit or of an attempt by the non-movant . . . to seek a delay in order to secure affidavits or take depositions to controvert the facts stated by the interested party or witness in his affidavit.").

### c. A Sham Affidavit

Finally, M-I argues that Celeste's affidavit is not competent evidence because it is a sham affidavit. However, the sham affidavit rule does not apply in this case because M-I directs us to no discrepancies between Celeste's affidavit and other testimony she provided, and we find none. *See Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (recognizing the sham affidavit doctrine, which sets out that a contradictory affidavit prepared by the same witness after a deposition should be disregarded if (1) the discrepancy is not explained, and (2) it appears the affidavit was drafted solely as a sham to defeat summary judgment).

### 2. M-I's Summary Judgment Evidence

The evidence attached to M-I's counter-motion for summary judgment included public records that identified 5299 DTC Boulevard as an address for Grynberg Petroleum and for Celeste; multiple company registrations with the Colorado Secretary of State identifying Celeste's mailing address as 5299 DTC Boulevard; an M-I credit application designating 5299 DTC Boulevard as the company's mailing address; and numerous legal

16

documents, including, among other things, court pleadings, leases, and quit claim deeds, that used 5299 DTC Boulevard as an address for Celeste, for Jack, and for Grynberg Petroleum. M-I argues that its summary-judgment evidence and the following undisputed facts established as a matter of law that 5299 DTC Boulevard is Celeste's home office address:

- Celeste was doing business as Grynberg Petroleum;

- Celeste was the owner of Grynberg Petroleum;

- Jack operated the business at 5299 DTC Boulevard;

- 5299 DTC Boulevard is the only address the business used—particularly during the time citation issued;

- Celeste has not identified any other office that either she or Jack used in the business;

- 5299 DTC Boulevard is the address used to send correspondence to and from M-I; and

- The citations were received by an agent at 5299 DTC Boulevard, and there is no evidence indicating that he was not an agent of either Jack or Celeste.

### 3.    Summary

Considering the summary judgment evidence presented by both sides, *see Lenk*, 361 S.W.3d at 611, including Celeste's affidavit, which we have concluded is competent summary-judgment evidence, neither party conclusively established whether or not Celeste was served at her home office. Rather, the summary judgment evidence raises a material fact issue that precludes M-I's summary judgment against Celeste in this bill of review. We sustain the second issue.

17

## IV. WAIVER OF MINIMUM-CONTACT COMPLAINT[8]

By the third issue, Jack argues that he did not generally appear and subject himself to personal jurisdiction in a Texas court by filing his motion for new trial. Jack claims that his motion for new trial was not inconsistent with his assertion that the Texas court lacked jurisdiction and therefore was not a general appearance and did not waive his special appearance. He urges this Court to construe his motion as a special appearance. We decline to do so.

### A. Applicable Law

#### 1. Special Appearance challenging Personal Jurisdiction

Under rule 120a, a special appearance, properly entered, enables a non-resident defendant to challenge personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a. Rule 120a(1) mandates, however, that a special appearance be filed "prior to a motion to transfer venue or any other plea, pleading or motion." *Id.* at R. 120a(1); *see Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004) (per curiam). "This is sometimes referred to as the 'due-order-of-pleading' requirement." *Exito Elecs. Co.*, 142 S.W.3d at 305. In addition to the due-order-of-pleading requirement, rule 120a also entails a "due-order-of-hearing" requirement, which "means that a special appearance motion 'shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard.'" *First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting TEX. R. CIV. P. 120a(2));

---

[8] Because we sustained the service issue as to Celeste, we direct our discussion and analysis of the third issue and the related meritorious defense issues, four through six, only to Jack.

18

*Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265, 266 (Tex. App.—Dallas 1985, no writ) ("A special appearance not ruled upon by the trial court presents nothing for review."); *see Milacron, Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 876 (Tex. App.—Texarkana 2008, no pet.) ("Rule 120a requires that the specially appearing defendant timely request a hearing, specifically bring that request to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction.").

### 2. General Appearance Waiver

Rule 120a requires strict compliance, and a non-resident defendant will be subject to personal jurisdiction in Texas courts if the defendant enters a general appearance. *Morris v. Morris*, 894 S.W.2d 859, 862 (Tex. App.—Fort Worth 1995, no writ); *Boyd v. Kobierowski*, 283 S.W.3d 19, 21 (Tex. App.—San Antonio 2009, no pet.) ("A general appearance entered before a special appearance waives any special appearance complaint."); *see First Oil PLC*, 264 S.W.3d at 776 (setting out that strict compliance with special-appearance rule of civil procedure 120a is required because failure to do so results in waiver); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[T]he personal jurisdiction requirement is a waivable right."). "[A] party enters a general appearance when [he] (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by [his] acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co.*, 142 S.W.3d at 304; *see Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Furthermore, while a general appearance, which waives defects in service, *must precede* any action of the court, which such appearance validates, a general appearance, which waives a

19

special appearance minimum-contacts complaint, *need not precede* an action of the court, which such appearance validates. *See Dan Edge Motors*, 657 S.W. 3d at 824.

### 3. Authority Setting Out Types of Appearances

Relevant to our analysis, in *Liberty Enterprises, Inc. v. Moore Transportation Company*, where a default judgment had been rendered and where the defendant had filed a rule 120a special appearance and a motion for new trial, the Texas Supreme Court held that the defendant had submitted to the trial court's general jurisdiction. 690 S.W.2d 570, 571-72 (Tex. 1985); *see* TEX. R. CIV. P. 120a. In so holding, the supreme court emphasized that the defendant submitted to the jurisdiction of the trial court when it filed a motion for new trial stating that it was "ready to try this case when it is properly set for trial" and agreed to the trial court's order setting aside the default judgment and granting a new trial. *Liberty Enters., Inc.*, 690 S.W.2d at 571-72; *see Landry v. Daigrepont*, 35 S.W.3d 265, 267-68 (Tex. App.—Corpus Christi 2000, no pet.) (concluding that the defendant waived a special appearance by first arguing the motion for new trial); *see also Phoenix Fireworks Mfg., Inc. v. DM Plastics, Inc.*, No. 04-98-00209-CV, 1998 Tex. App. LEXIS 7395, at *3-11 (Tex. App.—San Antonio, June 30, 1998, no pet.) (not designated for publication) (concluding that DM "waived its special appearance and made a general appearance by setting the hearing on the motion for new trial and by appearing and presenting argument at the hearing before its special appearance was determined" and noting that "DM also made a general appearance by approving the order granting the new trial").

20

Courts have also held that the mere filing of a motion for new trial or other pleadings, with or without "subject to" language, does not necessarily waive a previously filed or a simultaneously filed special appearance. *See, e.g., Dawson-Austin*, 968 S.W.2d at 323-24 (holding that a defendant who filed a motion to quash service, a plea to the jurisdiction, and a plea in abatement, all contained in the same instrument as a special appearance, and sought a continuance of the hearings on both the motion to quash and the pleas, without more, did not waive her jurisdictional challenge); *Lang v. Capital Res. Invs. I & II, LLC*, 102 S.W.3d 861, 864-65 (Tex. App.—Dallas 2003, no pet.) (in a default judgment case, holding that appellant's offer in his motion for new trial to participate in all necessary hearings and to proceed to trial on merits did not constitute a general appearance because the motion for new trial was made subject to appellant's special appearance and further holding that where appellant set his motion for new trial and special appearance for hearing on the same day, appellant did not make a general appearance because he objected to the trial court's decision to proceed on his motion for new trial before ruling on his special appearance); *Puri v. Mansukhani*, 973 S.W.2d 701, 707 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (concluding, in a no-answer default judgment case, that "appellant did not enter a general appearance and preserved his special appearance by making his motion for new trial strictly subject to his special appearance" and that, even though his motion for new trial expressly stated he was "ready to go to trial," the qualifying language accompanying the "ready" statement distinguished this case from *Liberty Enterprises*); *Koch Graphics, Inc. v. Avantech, Inc.*, 803 S.W.2d 432, 433 (Tex. App.—Dallas 1991, no writ) (detailing that the defendant filed

21

a special appearance and, subject to that, a motion to quash, a motion for new trial, and an answer).   In addition, Texas courts have held that a defendant may include language in the motion for new trial that it is ready to proceed to trial without waiving the special appearance, as long as the motion does not acknowledge jurisdiction or ask for some action other than dismissal for lack of jurisdiction.   *See, e.g., Lang*, 102 S.W.3d at 864; *Puri*, 973 S.W.2d at 707.

Finally, Texas courts have recognized that appearing in matters ancillary and prior to the main suit does not constitute a general appearance in the main suit and will not waive a personal-jurisdiction challenge.   *See Exito Elecs. Co.*, 142 S.W.3d at 304 (explaining that a party does not waive a special appearance by first filing a Rule 11 agreement because the latter is not a plea, pleading, or motion); *In re M.G.M*, 163 S.W.3d 191, 200-01 (Tex. App.—Beaumont 2005, no pet.) (refusing to hold that the defendant waived his special appearance when the party entered into an agreed collateral order); *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 267 (Tex. App.—San Antonio 2002, pet. dism'd) (holding that the filing of a writ of mandamus and motion for emergency relief did not waive a defendant's special appearance because, among other things, "an original proceeding is a formally independent matter"); *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 800 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("[Appellant] did not waive his special appearance by simply filing a notice of oral hearing on the motion to dissolve writ of garnishment."); *see also Carey v. State*, No. 04-09-00809-CV, 2010 Tex. App. LEXIS 5683, at *6-9 (Tex. App.—San Antonio July 21, 2010, pet. denied) (mem. op.) ("Recognizing the distinction between the main suit and an

22

ancillary proceeding, we hold the Careys' agreement to the extension of the temporary restraining and temporary injunction orders do not constitute general appearances."); *Turner v. Turner*, No. 14-98-00510-CV, 1999 Tex. App. LEXIS 491, at *8-9 (Tex. App.—Houston [14th Dist.], Jan. 28, 1999, no pet.) (not designated for publication) (holding that an attorney's presence at temporary restraining order hearing did not constitute a general appearance because the hearing related to an ancillary matter). The parties may also engage in discovery before the special-appearance hearing. *See* Tᴇx. R. Cɪv. P. 120a(1); *Horowitz v. Berger*, 377 S.W.3d 115, 122-23 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding Horowitz did not waive her special appearance by serving the plaintiffs with discovery requests or by filing a motion to compel discovery because the motion was not heard or decided before the trial court heard and ruled on the special appearance).

### 4.  Bill of Review

A bill-of-review petitioner must plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the petitioner was prevented from making by the fraud, accident, or wrongful act of the opposing party or by official mistake, (3) unmixed with any fault or negligence on the petitioner's own part. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752-53 (Tex. 2003). The absence of personal jurisdiction is a meritorious defense. *Blenkle v. Blenkle*, 674 S.W.2d 501, 504 (Tex. App.—El Paso 1984, no writ).

### B.  Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Horowitz*, 377 S.W.3d at 121-22 (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). To address the threshold waiver argument related to personal jurisdiction, we must determine the legal effect of Jack's actions related to his motion for new trial. Therefore, we also apply a de novo standard of review in this regard. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (providing that the trial court has no discretion in applying the law to the facts).

## C.    Discussion

Jack's motion for new trial was the only pleading filed. In his motion, Jack asserted that he had a meritorious defense and would "raise the defense of lack of proper jurisdiction and venue *in this Texas civil action*." (Emphasis added.) Jack also set out that "[p]rior to the filing of this civil action, Defendants sent notice to Plaintiff [M-I] that they were disputing Plaintiff's invoice amounts." Jack claimed that he would raise these defenses in the Texas court if the trial court granted his motion for new trial. *See Craddock*, 133 S.W.2d at 126 (requiring a new trial if the defendant shows (1) that the default was neither intentional nor the result of conscious indifference, (2) a meritorious defense, and (3) that a new trial would cause neither delay nor undue prejudice). Jack also asserted that his failure to answer was not intentional or the result of conscious indifference and that the granting of his motion for new trial would not delay or injure M-I. *See id.* Jack did not suggest that he made these statements only to comply with *Craddock*. He did not make his motion-for-new-trial claims subject to a special

24

appearance. In fact, Jack did not challenge personal jurisdiction by filing a special appearance before filing his motion for new trial. *See* Tᴇx. R. Cɪᴠ. P. 120a(1). Jack did not request a special appearance in his motion for new trial, and he did not file his motion strictly subject to a special appearance. *See id*; *Puri*, 973 S.W.2d at 707. Jack did not seek dismissal of the case, which would have been the requested disposition in a special-appearance plea. Instead, Jack prayed "that the judgment be set aside and that they be granted a new trial."

In sum, Jack filed no special appearance, and his motion for new trial was not filed subject to a special appearance. *See Puri*, 973 S.W.2d at 707. Jack's motion did not involve an independent matter; Jack was not engaging in discovery before a special-appearance hearing, and Jack's motion was not related to an ancillary proceeding. *See Horowitz*, 377 S.W.3d at 122-23; *Gutierrez*, 100 S.W.3d at 267. Jack recognized by his motion that an action was properly pending in the Texas court and sought affirmative action from that court. *See Exito Elecs. Co.*, 142 S.W.3d at 304; *Dawson-Austin*, 968 S.W.2d at 322; *see also Anderson v. Anderson*, 786 S.W.2d 79, 81 (Tex. App.—San Antonio 1990, no writ) ("A motion for new trial seeks to invoke the authority of the court, while the special appearance necessarily challenges that same authority."). And through the language in his motion, Jack made unqualified representations that he was ready to go to trial. *See Liberty Enters.*, 690 S.W.2d at 571-72.

Based on the above analysis, we cannot construe Jack's motion as a special appearance. Instead, we conclude that the filing of Jack's motion for new trial

25

constituted a general appearance. By entering a general appearance in this case, Jack invoked the authority of the trial court and waived his minimum-contacts personal-jurisdiction complaint. Because Jack generally appeared, the trial court can exercise jurisdiction over Jack without violating his due process rights. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam).

Furthermore, even if Jack's motion could be viewed as a special appearance followed by a motion for new trial on other grounds asserted, Jack waived any special appearance component of the motion by failing to request a hearing or obtain a ruling on the preliminary question of personal jurisdiction. *See First Oil PLC*, 264 S.W.3d at 776. We overrule this third issue.

Our determination that Jack entered a general appearance and, thus, waived his special appearance with regard to his minimum-contacts personal-jurisdiction complaint is dispositive of his fourth and fifth issues, which ask us to determine whether Jack established prima facie evidence of a meritorious defense and whether res judicata or estoppel bar him from asserting his meritorious defense. *See* TEX. CIV. R. 47.1; *King Ranch*, 118 S.W.2d at 752-53. The waiver further disposes of Jack's sixth issue, which asserts that M-I failed to offer argument or evidence that conclusively establishes that there are no fact issues as to the second and third elements of his bill of review—i.e., that Jack plead and prove he was prevented from making his meritorious defense by the fraud, accident, or wrongful act of the opposing party or by official mistake, unmixed with any fault or negligence on the petitioner's own part. *See* TEX. R. APP. P. 47.1; *King Ranch*, 118 S.W.2d at 752-53. Therefore, we also overrule the fourth, fifth, and sixth

26

issues.

## V.  ATTORNEYS' FEES

By their seventh issue, the Grynbergs contend that the trial court erred in awarding attorneys' fees to M-I.[9]   However, "attorney's fees are available to the successful party in a bill of review action if there is a legal basis for awarding them pursuant to the underlying cause of action."   *Palomin v. Zarsky Lumber Co.*, 26 S.W.3d 690, 696 (Tex. App.—Corpus Christi 2000, pet. denied).   In the underlying case, M-I sued the Grynbergs for an unpaid account for drilling fluid materials provided.   M-I claimed attorneys' fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008) (providing for recovery of attorneys' fees if the claim is for, among other things, rendered services, furnished material, a sworn account, or an oral or written contract).   M-I argues and we agree that section 38.001 provides a legal basis for awarding attorneys' fees pursuant to the underlying cause of action.   *See Palomin*, 26 S.W.3d at 696.

We will not overturn an allowance of attorneys' fees absent a clear abuse of discretion.   *Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 273 (Tex. App.—Houston [14th Dist.] 1992, writ denied; *see Cortland Line Co., Inc. v. Israel*, 874 S.W.2d 178, 184 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (concluding that the trial court abused its discretion when it refused to award attorneys' fees to judgment creditor in a judgment debtor's bill of review proceeding).   Because M-I was entitled to its attorneys' fees in this bill of review proceeding, we conclude that the trial court did not abuse its discretion in

---

[9] The Grynbergs do not complain of the amount of attorneys' fees awarded.

awarding M-I attorneys' fees.

The Grynbergs also contend that the trial court erred in rendering judgment for M-I on the full amount of its alleged attorneys' fees and ask this Court to remand this case to the trial court if we reverse and render the trial court's judgment as to Celeste. They explain that this request is made in order to segregate fees incurred by M-I in pursuing its claims against Celeste from those fees it incurred in pursuing its claims against Jack. However, because we have not reversed and rendered on the issue of proper service on Celeste, this request is premature. *See* TEX. R. APP. P. 47.1. Furthermore, to the extent we could construe this as a general argument that the trial court should have segregated M-I's attorneys' fees incurred through its claims against Celeste and those incurred through its claims against Jack, the Grynbergs bring that argument for the first time on appeal. Therefore, they have waived this general segregation argument, if any. *See, e.g., Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (concluding that if no objection is made to the failure to segregate attorneys' fees at the time evidence of attorneys' fees, the error is waived); *see also* TEX. R. APP. P. 33.1. We overrule the Grynbergs' seventh issue.

## V. CONCLUSION

As to Jack Grynberg d/b/a Grynberg Petroleum, we affirm the judgment of the trial court granting M-I's counter-motion for summary judgment and denying the Grynbergs' amended motion for summary judgment. As to Celeste Grynberg d/b/a Grynberg Petroleum, having concluded that the summary judgment evidence raises a material fact issue that precludes summary judgment in favor of M-I, we reverse the judgment of the

28

trial court granting M-I's counter-motion for summary judgment against Celeste Grynberg d/b/a Grynberg Petroleum, affirm the judgment denying the Grynbergs' amended motion, and remand for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 28th
day of December, 2012.